*Jay Salkini v. Iman Salkini*
Case No. 225 September Term, 2018
Opinion by J. Meredith


**DIVORCE – MARITAL PROPERTY – DIVISION OF RETIREMENT BENEFITS.** In a case in which the circuit court determined that husband's retirement account was marital property that should be divided equally as of the date of divorce, the court did not abuse its discretion in entering a qualified domestic relations order (QDRO) that provided that the amount to be transferred to the wife would be 50% of the balance in the plan on the date of divorce adjusted for investment earnings or losses on wife's share from the date of divorce to the date of transfer of wife's interest into a separate account.

REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 225

September Term, 2018

JAY SALKINI

v.

IMAN SALKINI

Fader, C.J.,
Meredith,
Raker, Irma S.
　　(Senior Judge, Specially Assigned),

JJ.*

Opinion by Meredith, J.

Filed:  November 21, 2019

* Judge Andrea Leahy did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 2016, Jay Salkini ("Husband"), appellant, and Iman Salkini ("Wife"), appellee, were divorced by order of the Circuit Court for Howard County. This appeal is limited to the question of whether the investment earnings that accrued in Husband's 401(k) account subsequent to the date of divorce should have been divided between Husband and Wife pursuant to a Qualified Domestic Relations Order ("QDRO"), or whether all investment earnings in that account after the date of the divorce should be considered Husband's sole property. The Circuit Court for Howard County, which had ruled in the judgment of divorce that Husband's 401(k) account "shall be divided equally between the parties as of the date of divorce," entered a QDRO which ordered that (a) the total value of the account as of the date of the amended judgment of divorce should be divided 50% to Wife and 50% to Husband, and (b) any investment earnings on Wife's share through the date of segregation of her interest pursuant to the QDRO should be added to her share in the account at the time of segregation. Husband presents the following issue on appeal:

> Whether the trial court abused its discretion when it entered a Qualified Domestic Relations Order pertaining to Appellant's 401(k) savings plan that provided for adjustment due to investment experience, when such relief was not granted in the trial court's original or amended judgment.

For the reasons set forth herein, we shall affirm the judgment of the Circuit Court for Howard County.

## FACTS AND PROCEDURAL HISTORY

After a five-day hearing on Wife's complaint for absolute divorce, the court issued a memorandum opinion making certain findings, including "which property is marital, and the value" of that property. Under "Marital Property," the court listed Husband's

401(k) account as "Tecore Nationwide 401(k) ([titled in] Husband's name). Marital. Value $513,000." Under the heading of "Distribution of Property and Monetary Award," the court ordered that the Husband's 401(k) be "divided equally," stating:

> Tecore Nationwide 401(k) shall be divided equally between the parties by way of a qualifying court order. Wife shall arrange for the necessary court order.

On January 29, 2016, Wife filed a Motion to Revise Judgment of Absolute Divorce—for reasons unrelated to the issues in the current appeal—in order to clarify that the monetary award was not alimony. Husband opposed the motion. By order entered February 23, 2016, the court entered an Amended Judgment of Absolute Divorce, which clarified that the monetary award "is not alimony," and included the following paragraphs relative to Husband's 401(k) account (unchanged from the previously entered judgment of divorce):

> ORDERED, ADJUDGED, AND DECREED, that, the Defendant's Tecore Nationwide 401(k) account shall be divided equally between the parties as of the date of divorce. Plaintiff shall promptly shall [sic] submit to the Court a qualified domestic relations order as defined in the Retirement Equity Act of 1984, as from time to time amended, if one is necessary, to divide the Defendant's Tecore Nationwide 401(k) account; and it is further

> ORDERED, ADJUDGED, AND DECREED, that the Court retains jurisdiction to amend this Judgment and/or the aforesaid qualified domestic relations order for the purpose of maintaining its qualifications as a qualified domestic relations order under the Retirement Equity Act of 1984, or any other subsequent legislation . . . .

On March 22, 2016, Wife filed a notice of appeal. In that appeal, Wife raised issues (unrelated to the division of the 401(k)) regarding the monetary award. Our unreported opinion was filed on April 5, 2017. *See Salkini v. Salkini*, No. 92, September

2

Term, 2016, 2017 WL 1248024 (2017). We held that "the trial court's failure to explain the inequitable distribution of marital property" required a remand in order for the court to "consider the factors enumerated in [Maryland Code (1984, 2012 Repl. Vol.), Family Law Article ("FL"), § 8-205(b)] and provide its reasoning for distributing the marital estate in the manner it decides." On June 23, 2017, the Circuit Court for Howard County filed a memorandum intended to comply with our decision in that appeal.

During the pendency of Wife's appeal, Husband had sent her an e-mail on July 5, 2016, stating:

Iman,

You need to open an IRA account with your bank, so I can transfer 50% of the Nationwide 401K to this new account. The account had a balance of $439,734.08 on 1/20/2016. Your portion is $219,867.04.

I pray to Allah that you save this money for your retirement and don't spend it on legal fees.

J.

On January 3, 2018, Wife filed a Motion to Enter Qualified Domestic Relations Order, in which Wife asserted that her counsel had prepared and forwarded to Husband's counsel a proposed QDRO, but the parties were at an impasse. The motion stated:

3. That since forwarding [the QDRO] to [Husband's counsel], [Wife's counsel] has made multiple attempts to obtain the signature of [Husband] including emails, letters and phone calls. That despite repeated demands, [Husband] refuses to sign the attached QDRO. The attached QDRO is in compliance with the Amended Judgment of Divorce entered on February 23, 2016.

4. That [Husband] is the sole owner of Tecore, Inc. and controls distributions from the retirement plan.

3

5. That given [Husband's] refusal to cooperate in executing the QDRO, [Wife] is in need of the Court's execution of the proposed QDRO without [Husband's] signature.

Paragraph 3 of Wife's proposed QDRO was worded as follows:

> **3. AMOUNT OF ALTERNATE PAYEE'S BENEFITS.** (a) The Alternate Payee's [*i.e.*, Wife's] interest in the Plan shall be **50% (fifty percent)** of the Participant's Total Vested Account Balance in the Plan, valued as of February 23, 2016 ("Valuation Date"). **The Alternate Payee interest shall be adjusted for investment earnings or losses <u>on her share</u> from the valuation date to the date of segregation of Alternate Payee's interest** in a separate account. In the event that there is an outstanding loan balance as of the Valuation Date, the outstanding loan balance <u>shall</u> be included for purposes of calculating the account balance to be divided.

(Emphasis added in second sentence.)

Husband filed a response in which he opposed Wife's motion. He denied that Wife's proposed QDRO "is in conformance with the applicable Judgment of Divorce." Husband's opposition asserted: "The QDRO currently submitted by [Wife] seeks distributions to her that both post-date the Judgment of Absolute Divorce and are in excess of her entitlement." Husband submitted his own proposed QDRO which limited the amount to be transferred to Wife to 50% of the account balance on the date the circuit court had announced that it was granting a judgment of divorce, with no share of any investment earnings that had accumulated in the account during the two years that had elapsed since the date of divorce. That is, Husband's proposed alternative language for the QDRO stated: "The Alternate Payee's [Wife's] interest in the Plan shall be **50% (fifty percent)** of the Participant's Total Vested Account Balance in the Plan, valued as of January 19, 2016 ("Valuation Date")."

4

On January 30, 2018, the court granted Wife's motion and entered a QDRO which provided for Wife to receive 50% of the investment earnings that had accrued since the entry of the amended judgment of divorce. The QDRO entered by the court included the valuation language proposed by Wife, namely:

> The Alternate Payee's [*i.e*., Wife's] interest in the Plan shall be **50% (fifty percent)** of the Participant's Total Vested Account Balance in the Plan, valued as of February 23, 2016 ("Valuation Date"). The Alternate Payee interest shall be adjusted for investment earnings or losses on her share from the valuation date to the date of segregation of Alternate Payee's interest in a separate account.

On February 9, 2018, Husband filed a motion to reconsider. After the court denied Husband's motion to reconsider, Husband noted this appeal.[1]

## STANDARD OF REVIEW

After considering the factors set forth in FL § 8-205(b), a court may transfer ownership of an interest in a retirement plan "from one party to either or both parties." FL § 8-205(a)(2)(i). In *Woodson v. Saldana*, 165 Md. 480, 489 (2005), we described the "broad discretion" afforded courts when making this determination:

> "[T]he court has broad discretion in evaluating pensions and retirement benefits, and in determining the manner in which those benefits

---

[1] On August 15, 2018, Husband filed a separate notice of appeal in which he indicated he was raising the issue of "[w]hether the trial [c]ourt improperly entered an Order on July 18, 2018 (dated July 16, 2018) granting Appellee a monetary award 13 months after issuing a Memorandum in response to a prior Court of Special Appeals decision in this case." But Husband presented argument in his brief on only one issue, namely, the division of investment earnings in the 401(k) account. Maryland Rule 8-504(a)(6) requires that an appellant include in the brief "[a]rgument in support of the party's position on each issue." Therefore, any issue as to whether the July 18, 2018 order was improperly entered is not before us. *Anne Arundel Cnty. v. Harwood Civic Ass'n*, 442 Md. 595 (2015); *Blue v. Arrington*, 221 Md. App. 308 (2015).

are to be distributed." *Welsh v. Welsh,* 135 Md. App. 29, 54, 761 A.2d 949 (2000), *cert. denied,* 363 Md. 207, 768 A.2d 55 (2001).

Accordingly, we review the court's ruling in this case for abuse of discretion.

## DISCUSSION

Husband focuses on language that was included in both the initial judgment of divorce and the amended judgment of divorce relative to Husband's 401(k) account. In both of those judgments, the circuit court "ORDERED, ADJUDGED, AND DECREED, that [Husband's] Tecore Nationwide 401(k) account shall be divided equally between the parties **as of the date of divorce**." (Emphasis added.) He urges us to construe this language to mean that, on the date of divorce, Wife's share became fixed at 50% of the valuation of the account on that date, and any investment earnings in the account after that date were Husband's sole property.

We interpret the plain language in the amended judgment of divorce to mean that the corpus of Husband's 401(k) account as of the date of the judgment of divorce is to be divided equally, and a QDRO will be entered to authorize the transfer to Wife. It does not follow from that language that any earnings that accrued in the account attributable to a delay in making the transfer of Wife's share would become Husband's sole property. The QDRO entered by the court rationally provided that Wife's 50% interest in the account "shall be adjusted for investment earnings or losses <u>on her share</u> from the valuation date to the date of segregation of Alternate Payee's interest in a separate account." (Emphasis added.) When an alternate payee's share is expressed as a fraction or a percentage, the earnings in the account between the date of divorce and the date of segregation of the

6

alternate payee's interest into a separate account would be derived from both parties' interests, not the original beneficiary's interest alone. And, as a matter of equity, it was clearly the intent of the circuit court to divide this marital property equally between the spouses.

In reaching this conclusion, we recognize that, under different circumstances, this Court held in *Allred v. Allred*, ___ Md. App. ___, No. 672, September Term, 2018 (2019)—a case filed or intended to be filed simultaneously herewith—that, in a case in which the alternate payee's share was expressed as a specific sum rather than a percentage, and the parties' marital settlement agreement provided that the alternate payee was to share in the account's investment experience "until the date of divorce," the circuit court erred in entering a QDRO that provided for the alternate payee to share in the account's investment experience subsequent to the date of divorce. Both of these cases illustrate the importance of careful drafting and the advisability of addressing this issue explicitly in separation agreements and judgments of divorce if the marital property includes any investment accounts.

We conclude that the QDRO entered by the circuit court in this case is consistent with the result we approved in *Rivera v. Zysk*, 136 Md. App. 607 (2001). In *Rivera*, the parties entered into a separation agreement, later merged into a judgment of divorce, which provided for the wife to receive 50% of the husband's Northrup Grumman 401(k) retirement account. The separation agreement was silent regarding allocation of gains or losses in the account. (This fact is gleaned from our review of the briefs filed in *Rivera*, which are available on Westlaw.) The husband refused to sign the wife's proposed

7

QDRO providing for the wife to receive 50% of the earnings the account had experienced from the date of the divorce to the date of distribution to her pursuant to the QDRO, but the court executed the wife's proposed QDRO. The husband appealed to this Court, and we affirmed, explaining:

> We perceive no error in the chancellor's granting appellee the earnings experience generated by the Northrup Grumman 401k. The agreement signed by the parties gave appellee [the wife] 50% of the account valued at $234,000. At the time of distribution, nearly one year later, the account had appreciated to approximately $300,000. Appellant [the husband] argues that appellee was entitled to 50% of the value of the account as of the date of the agreement and all subsequent earnings remained with appellant. **The chancellor concluded that the agreement was not ambiguous and awarded appellee 50% of the increased value. The decision was eminently fair.**

*Rivera*, 136 Md. App. at 620 (emphasis added).

Here, we conclude, as we did in *Rivera*, that the circuit court did not abuse its discretion in entering a QDRO that provided for the division of the Tecore Nationwide 401(k) "equally between the parties" and included the gains or losses that had accrued on Wife's 50% share from the date of the divorce to the date of segregation of Wife's interest.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**