822 A.2d 460

Christopher R. McCLEARY

v.

Mari Kathleen McCLEARY.

No. 2614, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 27, 2002.

Reconsideration Denied April 21, 2003.

450

° Shale Stiller (Evelyn W. Pasquier, John R. Wellschlager and Piper Rudnick LLP, Baltimore, and Patrick M. Donahue, Annapolis, on the brief), for appellant.

Mary C. Baldwin (Jonathan P. Kagan and Brassel & Baldwin, P.A. on the brief), Annapolis, for appellee.

Argued Before DAVIS, ADKINS and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

DAVIS, Judge.

Appellant Christopher R. McCleary appeals an order issued by the Circuit Court for Anne Arundel County that granted appellant an Absolute Divorce and awarded appellee Mari Kathleen McCleary a marital property award totaling $2,100,000, indefinite alimony in the amount of $6,000 per month, and a $150,000 contribution toward appellee's attorney's fees. On appeal, appellant presents for our consideration four issues,[1] which we have rephrased and combined into three questions as follows:

I. Did the trial court err in granting appellee a $2,100,000 marital property award?

II. Did the trial court err in finding that appellant had dissipated $964,175 of the marital assets?

---

1. We combine appellant's fourth issue, which deals solely with the court's valuation of the Annapolis Helicopter Service, LLC (AHS), with appellant's broader issue dealing with whether the marital award was erroneous.

III.  Did the trial court err in awarding appellee attorney's fees?

We answer appellant's questions one and two in the affirmative and question three in the negative, thereby vacating the judgment of the trial court.

## FACTUAL BACKGROUND

The parties were married in 1978.  Three children were born of the marriage, all of whom are still minors.  Both parties have undergraduate degrees.

In August 1978, shortly after their marriage, the parties moved to Arnold, Maryland, and purchased a townhouse in which they resided.  Appellant was employed at American Seamless Tubing, earning a salary of $18,000 per year.  Appellee was an elementary school teacher at St. Jane Frances.

In 1979, the parties moved into a house that they built in the Chartridge Community in Severna Park, Maryland.  They kept the Arnold townhouse as investment rental property. Appellee was employed as a waitress at the Crofton Country Club and eventually became the banquet manager.  It was at the country club that she engaged in an extramarital affair with a co-worker.  The parties separated and later reconciled.

The parties began a series of moves spanning from 1981 through 1993, which were dictated by appellant's movement up the ladder in the corporate and financial world.  The cities in which the parties lived included Fairfax, Virginia, Houston, Texas, Cincinnati, Ohio, Washington, D.C., and Reston, Virginia.

Appellee was employed with various hotel chains until the birth of their first child, Caitlin, in 1986.  The parties decided that appellee would resign from her employment to be Caitlin's primary caretaker.  Kelsey, the parties' second child, was born in 1989.  Approximately five years later, Caroline, the parties' third child was born.

In January 1996, appellant accepted employment as the President and Chief Executive Officer of Digex in Beltsville,

Maryland, at a salary of $150,000 per year plus bonus. In 1997, when Digex was sold, appellant was earning $250,000 per year plus bonus and had stock options worth $8.4 million. After the sale, appellant resigned in contemplation of starting his own company and exercised his stock options. Consequently, in 1997, appellant had income of $9,161,265 and the family's net worth increased to more than $6 million.

Appellant began planning the structure of the company that would become USinternetworking, Inc. (USi), an application service provider leasing application software over the internet. Along with two other individuals, appellant founded USi, incorporating on January 4, 1998. Appellee, who wanted to return to the workplace, began working as Vice President of Corporate Relations at USi, although she did not receive a salary. The parties, therefore, employed Alice Drinnon as a full-time housekeeper and nanny. Additional nannies were hired to care for the children throughout the day.

In 1998, the parties had a joint income of $584,685, of which $131,455 was appellant's salary and $367,000 was interest and capital gains on the Digex funds. In August 1998, the parties purchased 37 Boone Trail at a cost of $865,000, with a mortgage of $700,000. The property was extensively renovated and redecorated at a cost of $1,176,854.

In January 1999, appellant formed McCleary Maritime Properties, LLC (MMP) to purchase an Annapolis marina for $2.1 million. Appellant did not discuss the purchase with appellee until *after* he had bought the property. Appellant formed Wildcat Marine Operating Co., Inc., later renamed McCleary's Pier 4 Marina, Inc., to operate the marina. Appellee managed the operation of the marina and office rentals.

On April 4, 1999, USi made its initial public offering. In December 1999, appellant exercised an option to buy 375,000 shares at $20.50 for a total of $2,250,000. Appellant financed the option exercise by borrowing $2.25 million from USi. The loan was represented by a promissory note dated September 24, 1999. Because the option exercise resulted in taxable income of more than $5 million, USi lent appellant another

$1,900,000 to cover his additional tax obligation. This loan was also represented by a promissory note dated December 21, 1999. Both loans were later consolidated into a single loan of $4,284,744 represented by a promissory note dated July 24, 2000, bearing nine percent annual interest, payable on demand with ninety-days' notice.

In February 2000, appellant sold 313,968 of his USi shares for $18,841,220. The parties placed $3.4 million of the Digex funds into brokerage accounts at Merrill Lynch, Legg Mason and Credit Suisse First Boston (CSFB). On March 15, 2000, appellant purchased a twenty-five percent timeshare interest in a Citation II aircraft from Flight Option for $684,866. The parties also purchased property at Ferry Farms for $2,034,836.

On June 2, 2000, appellant formed AHS to develop a charter helicopter service. AHS purchased a helicopter for $1.45 million in cash with funds advanced by appellant. In March 2001, AHS negotiated a $1 million loan from General Electric Capital (GE Capital), secured by the aircraft and by appellant's individual guaranty. The proceeds went to McCleary Capital Group, LLC (MCG)—appellant's wholly-owned company that served as a holding company for AHS and MMP.

USi stock prices declined drastically in 2001. On September 28, 2001, USi served appellant with a demand for repayment of the note plus accrued interest on or before December 27, 2001. Appellant protested, stating that he had understood that the consolidated note was merely a "retention hook" loan to be forgiven if he fulfilled his obligations under his employment agreement. USi disagreed, and its vice president and general counsel stated that the company would take any necessary action to collect on the note. In January 2002, the company declared bankruptcy and the bankruptcy court terminated appellant's employment contract.

Meanwhile, in January 2000, appellee began exhibiting erratic behavior by drinking to excess and staying out late. A few months later, one of the household assistants resigned upon learning that appellee had purchased Phentermine in her

name over the internet. It was subsequently learned that appellee had made similar purchases in Caitlin's name.

On May 6, 2000, appellee went to Ocean City, Maryland, and committed adultery with the parent of one of Caitlin's schoolmates whom she had met on Caitlin's school trip to Europe. Appellant became suspicious of appellee and hired a detective in June 2000. Later that month, appellant learned of the affair and e-mailed appellee with offers of reconciliation. All attempts at reconciliation failed and the parties formally separated on August 25, 2000.

Additional facts will be provided as they become relevant to our discussion of the issues raised in this appeal.

## LEGAL ANALYSIS

### I

Appellant contends that the trial court erred in granting appellee a $2,100,000 marital property award. Specifically, appellant asserts that the court erred in valuing his interest in AHS. Appellant also avers that, because he had a negative net worth, the court should not have ordered him to pay appellee $2.1 million. Appellant concludes that the court must have disregarded his insolvency because it erroneously considered his earning capacity in determining the marital property award. We will address each contention in turn.

### A

Appellant first asserts that the court incorrectly valued his interest in AHS. According to appellant, the court should have valued his interest in MCG, which owned AHS, in order to determine the value of his interest in AHS. Appellant also contends that "the valuation was incorrect because the trial court did not deduct the $1 million secured debt to GE Capital in valuing the interest in AHS."

■■■ ▪ Maryland Rule 8–131(c) permits us to review cases that have been tried without a jury on both the law and the evidence. Under Md.Code (1999 Repl.Vol.), Fam. Law (F.L.),

§ 8–205(a), whether to grant a monetary award is generally a decision within the sound discretion of the trial court. In making this decision, the court must follow a three-step process:

First, for each disputed item of property, the court must determine whether it is marital or non-marital. Second, the court must determine the value of all marital property. Third, the court must determine if the division of marital property according to title will be unfair; if so, the court may make an award to rectify the inequity.

*Collins v. Collins,* 144 Md.App. 395, 409, 798 A.2d 1155 (2002) (citations omitted). We will not overturn a trial court's decision in granting a monetary award "unless the judgment [sic] is clearly erroneous and due regard will be given to the trial judge's opportunity to judge the credibility of the witnesses." *Caccamise v. Caccamise,* 130 Md.App. 505, 521, 747 A.2d 221 (2000); *see Collins,* 144 Md.App. at 408–09, 798 A.2d 1155.

◼ In its valuation of AHS, the trial court issued the following findings:

[AHS] is an LLC owned by [MCG], which is owned by [appellant]. It was established in June 2000 to acquire a helicopter and conduct an airfare service. While the parties had serious marital problems, [appellant], through AHS, purchased a Bell 507 helicopter for $1.45 million cash ... No marital debt was utilized to acquire the asset. On March 8, 2001, AHS obtained a loan of $1 million from GE Capital Credit Corporation. The proceeds were deposited by MCG and disbursed for other investments through the LLC's, including the Whitehall property ... The business has been valued by an expert, *but the best value of the LLC is that of its underlying asset—the helicopter.* [AHS] also has an operating checking account at Farmers Bank [ ], which has a balance of $258. Therefore, the [c]ourt finds that the asset is marital, titled to [appellant], with a value of $1,200,258.

(Emphasis added.)

The trial court's findings are clearly erroneous. Undisputed evidence demonstrated that AHS owned the helicopter, that

the sole membership interest in AHS was owned by appellant's holding company, MCG, and that the GE Capital loan was to AHS and not to appellant. Nonetheless, the court improperly classified AHS's debt to GE Capital as appellant's non-marital debt and effectively pierced the LLC's veil of limited liability. Although we agree that AHS is marital property, the trial court erred in designating AHS's debt as appellant's non-marital debt, which resulted in an overstatement of appellant's marital property by $1,000,000.

## B

Appellant next avers that it was clear error for the court to order him to pay a $2,100,000 marital property award to appellee when his net worth was negative $279,977. Appellee responds that the trial court considered all applicable statutory factors and did not abuse its discretion in determining the monetary award.

Maryland law requires a trial court to make an *equitable* division of marital property, not an *equal* division. *Alston v. Alston,* 331 Md. 496, 508, 629 A.2d 70 (1993). In determining the amount of the monetary award, the trial court is required to consider the following factors:

(1) the contributions, monetary and non[-] monetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired . . .;

(9) the contribution by either party of property described in [F.L.] § 8–201(e)(3) [ ] to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home;  and

(11) any other factor the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award. . . .

F.L. § 8–205(b);  *see Doser v. Doser,* 106 Md.App. 329, 350–51, 664 A.2d 453 (1995).  The statutory factors are not prioritized in any way.  Consequently, "[t]he application and weighing of the factors is left to the discretion of the trial court."  *Alston,* 331 Md. at 507, 629 A.2d 70.

■ In the case *sub judice,* the trial court discussed each of the eleven statutory factors in determining the monetary award.  The court found that both parties made significant monetary and non-monetary contributions to the acquisition of their marital property.  Although appellant indicates that appellee was solely to blame for the demise of the marriage, the trial court clearly found otherwise, as it attributed actions by both parties to their estrangement.

Factor three required the trial court to consider the economic circumstances of the parties.  The record demonstrates that the court accepted the uncontradicted evidence presented at trial and acknowledged appellant's liabilities in its "Schedule of Property Interests," which the court attached to its memorandum opinion.  The court specifically found that appellant's liabilities included the $4,699,110.88 debt to USi and the $1,125,000 tax liability to the Internal Revenue Service (IRS).[2]  Consequently, the court found the non-marital debt

---

2. Appellant's tax liability resulted from his failure to pay taxes in 2000. Although appellant recalls instructing Legg Mason to make a payment to the IRS, when he examined his Legg Mason statements, appellant could not find an entry for the payment he thought had been made. The IRS advised appellant that it had no record of receiving the

rendered appellant insolvent with a negative net worth of $279,977.

Yet, despite its findings, the court seemingly discounted appellant's negative net worth in its analysis of factor three. In analyzing the parties' economic circumstances, the court found that appellant "was the financially dominant spouse, has the ability to earn far more than [appellee] and has more financial security."

The court briefly mentioned, under its factor eleven analysis, that the parties had "accumulated a significant amount of marital and non-marital debt," which caused the parties' wealth to greatly diminish since the date of their separation. The court, however, failed to distinguish between the amount of appellant's marital and non-marital debt—$7,812,111—and appellee's total debt—$714,400. The fact that appellant's debt was greater than appellee's by at least $7 million warranted discussion in the court's marital property analysis. The trial court's failure to consider the extent of appellant's debt constitutes clear error.

## C

Appellant concludes that, because the court granted such a large monetary award, it must have inappropriately considered his earning capacity. Appellant's conclusion is based upon the court's discussion of the parties' economic circumstances:

The [c]ourt finds that [appellant] is the financially dominant spouse, has the ability to earn far more than [appellee,] and has more financial security. At present, she has the ability to earn $30,000 per year. He presently earns $375,000 per year and has the present ability to earn more.

In *Goldberg v. Goldberg*, 96 Md.App. 771, 626 A.2d 1062 (1993), Husband claimed that the trial court erred in basing the monetary award, alimony, and child support award in part

estimated tax payment and his tax deficiency for 2000 amounted to over $2 million.

upon its finding that he was able to earn $400,000 per year. *Id.* at 784, 626 A.2d 1062. The trial court had found that Husband, in order to hide the true value of his assets and true amount of his income, had complicated his financial dealings. The court further found that Husband "had the ability to earn in excess of $400,000 a year." *Id.* Specifically, the trial court stated:

> For the last [fifteen] years the [husband] has engaged in elaborate and complex plans for the sheltering of income by the formation of corporate entities and various accounts, that the [husband's] manipulations have been so complex that it's virtually impossible to trace the source of funds for many of the [husband's] investments. That the [husband] constantly commingled his assets and passed them through various corporate structures on a regular basis. That the [husband's] skill, knowledge and talent in financial manipulation make it probable that the [husband] will continue to be financially successful and earn an income comparable to the average earned in the years 1984 to 1990, which is in excess of $400,000 a year.

*Id.* at 784–85, 626 A.2d 1062.

On appeal, Husband contended that the court erred because the judge found that he had the ability to earn in excess of $400,000 a year, despite his testimony that his earning capacity had greatly diminished and that his new investments were failing to produce appreciable income. We disagreed, holding that it is within a trial judge's sound discretion whether to believe or disbelieve any witness. We further opined:

> It may be that *if* [the husband] does have to sell assets to pay the monetary award, he will, as he testified, not have the ability to generate substantial income, or it may be that, with or without those assets, he has, as [the trial judge] believed, the "skill, knowledge and talent in financial manipulation" to produce an annual income in excess of $400,000. The simple fact is that we do not know. [The trial judge] carefully made the monetary award payable over a five[-] year period, without interest.

*Id.* at 786, 626 A.2d 1062. Consequently, we ultimately held that the trial judge did not err in considering Husband's ability to earn an annual income of $400,000 in determining alimony, child support, and Wife's monetary award. *Id.*

■ In the case *sub judice,* it was reasonable for the trial court, in determining the amount of appellee's monetary award, to consider appellant's ability to earn at least $375,000 per year. The court's findings regarding appellant's earning capacity are relevant to its determination of appellant's method of payment of the monetary award. Thus, although the trial court committed clear error in granting appellee a $2.1 million monetary award, it was not clearly erroneous for the court to consider appellant's earning capacity in making its determination.

## II

Appellant next contends that the trial court erred in its finding that appellant dissipated marital assets. Appellant states that Maryland law regarding dissipation is unclear and he encourages us to clarify it by adopting the section of the American Law Institute Principles of the Law of Family Dissolution: Analysis and Recommendation (2002)(the "ALI Principles"), which addresses dissipation.[3] Furthermore, appellant asserts that the trial court incorrectly applied the current Maryland law on dissipation.

■ A trial court's finding regarding dissipation of marital assets will be upheld unless the finding is clearly erroneous. *Beck v. Beck,* 112 Md.App. 197, 216, 684 A.2d 878 (1996). "Dissipation may be found where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time where the marriage is undergoing an

---

**3.** The ALI Principles set forth criteria for determining whether one spouse should bear all of the losses resulting from his or her spending. The criteria are divided into three categories: (1) Loss or destruction of marital property through intentional misconduct; (2) Loss or destruction of marital property through neglect; and (3) Unilateral gifts of marital property.

irreconcilable breakdown." *Sharp v. Sharp,* 58 Md.App. 386, 401, 473 A.2d 499 (1984). We have defined dissipation as expending marital assets "for the principal purpose of reducing the funds available for equitable distribution." *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 311, 649 A.2d 1137 (1994). Thus, we must consider whether the trial court erred in finding that appellant expended marital assets with the principal purpose of reducing the funds available for equitable distribution.

The party alleging dissipation has the initial burden of production and burden of persuasion. *Jeffcoat,* 102 Md.App. at 311, 649 A.2d 1137. Once that party "establishes a *prima facie* case that monies have been dissipated ..., the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate. *Id.; see Collins,* 144 Md.App. at 412, 798 A.2d 1155.

In *Beck,* Wife alleged that Husband dissipated three marital assets: (1) an $11,924 savings account; (2) a $100,000 certificate of deposit; and (3) $15,064 in proceeds from the liquidation of Husband's life insurance policies. *Beck,* 112 Md. App. at 215, 684 A.2d 878. Husband admitted converting the assets into cash, but testified that "some of this money was used to pay the $6,000 private investigator fee, to pay for college tuition for the youngest of the Beck children, and for other day[-]to[-]day living expenses." *Id.* The trial court found that there was no dissipation of the three assets, opining that "[i]t is impossible for the court to say what amounts, if any, were not used for actual, reasonable living expenses...." *Id.* at 216, 684 A.2d 878. The trial judge also recognized that the standards of living of both parties were high and that Wife had expended $91,762 in the same period for her living expenses. We affirmed the trial court's findings regarding dissipation, asserting that the court was not clearly erroneous. *Id.* at 217, 684 A.2d 878.

In the instant case, appellee alleged that appellant had dissipated marital assets from the Bank of America and Morgan Stanley accounts, as well as through appellant's "member draws" from his MCG and AHS accounts. The trial

court issued an opinion regarding appellee's Motion for Accounting and Dissipation of Assets, in which it found that appellee had established a *prima facie* case of dissipation. Within the opinion, the court instructed appellant that it would be his "burden at trial to provide an explanation and the court will require that he account of [sic] those assets at this time."

Pursuant to the trial court's order, appellant filed an accounting of assets on November 11, 2001 and produced an amended accounting at trial. The trial court found that appellant spent $1,468,175 for personal living expenses during the fourteen-month period of separation. Adopting appellee's argument that $36,000 per month would have been a reasonable amount for appellant to spend, the court found that the amount spent in excess of that sum—$964,175—was spent with the intent to reduce the amount available for distribution. Consequently, the trial court made the following findings:

> In summary, the [c]ourt finds that $959,716 [4] was wrongfully dissipated by [appellant] for personal expenses other than family purposes from marital funds without the knowledge or consent of [appellee] and during the [fourteen] months prior to trial, which the [c]ourt finds to be extant marital property charged to [appellant]. Except to the extent indicated above, [appellant] has not produced sufficient evidence to show that the expenditures were appropriate.

The trial court's finding that appellant dissipated marital assets is clearly erroneous because the court made its determination of dissipation without examining the specific expenditures that exceeded $36,000 per month to ascertain whether they had been made for family purposes. In fact, the analysis by appellee's accountant, Edward Tucker, of appellant's personal expenses, upon which the trial court greatly relied, inaccurately included tuition payments to the children's school, child care expenses, and mortgage payments on the parties' jointly-owned property. These expenses equaled approxi-

---

4. The court adjusted the previously used figure of $964,175.

mately $251,492.92 and were inappropriately characterized as personal expenses.

Furthermore, the court erroneously relied upon Tucker's analysis, which classified all checks for less than $5,000 as personal expenses, without itemizing them. The "under-$5,000" check category constituted approximately $356,000 of the amount the court found to be dissipated. Yet, the court had no idea for what purpose these checks were written and, therefore, could not determine whether the amounts were expended by appellant with the specific aim of reducing the funds available for equitable distribution.

Additionally, Tucker's analysis listed numerous credit card payments under appellant's personal expenses. Credit card statements in the record demonstrate a payment for a charitable contribution in the amount of $10,000, a payment for psychological treatment of the parties' children in the amount of $13,404, and numerous payments for household and family expenses. These payments should not have been included in the court's dissipation calculation.

Finally, in analyzing appellant's MCG member draws, Tucker calculated a total of $332,939 that he attributed to personal expenditures. The court ultimately found that appellant "paid $417,704 from the LLC[']s for personal expenses," although it failed to explain the addition of $84,765 to Tucker's number. We are unable to discern from the record whether and how the court determined that these expenses,[5] which, facially, appear legitimate, were inflated. The court included the following in its calculation of the amount appellant was found to have dissipated: $2,956.75 in charitable donations, $946.63 for costs incurred in connection with placing Ferry Farms for sale, $7,591.53 in improvements to boats scheduled as marital property, $2,022.40 for interest expense on mortgages, $1,701 in property insurance premiums, $64,849.79 in professional

---

5. Although the lower court could properly find based upon supporting evidence that the amounts were inflated, we perceive no basis to include two types of expenditures in an amount deemed to have been dissipated.

fees for lawyers, architects, and surveying, and $8,664.59 in property taxes for Ferry Farms. It was error for the court to include these payments in its dissipation calculation, without explaining why they were not proper expenditures. We remand the case for the chancellor to explain the basis for including these expenditures in his finding of dissipation.

### III

Appellant's final contention is that the trial court erred in awarding appellee $150,000 in attorney's fees. According to appellant, "the trial court's conclusion that [appellant] was insolvent, even before it saddled him with a $2.1 million marital award, made a further award of $150,000 in attorneys' fees (in addition to the earlier $150,000 award) wholly inappropriate." Appellant further avers, "If a court is to accomplish the objective of placing each party in a similar financial situation in its division of marital property and its award of alimony, no award of counsel fees was appropriate in this case."

Decisions regarding the award of attorney's fees rest solely within the sound discretion of the trial court. *Collins,* 144 Md.App. 395 at 447, 798 A.2d 1155. The Court of Appeals has held:

> The proper exercise of such discretion is determined by evaluating the [trial court's] application of the statutory criteria set forth [in F.L., §§ 7–107, 8–214, 11–110, and 12–103] as well as the consideration of the facts of the particular case. Consideration of the statutory criteria is mandatory in making the award and failure to do so constitutes legal error.

*Petrini v. Petrini,* 336 Md. 453, 468, 648 A.2d 1016 (1994) (citations omitted).

The above statutes require the trial court "to consider the financial resources and financial needs of both parties and whether there was substantial justification for bringing, maintaining, or defending the suit." *Collins,* 144 Md.App. at 447, 798 A.2d 1155.

In the case *sub judice,* the trial court awarded appellee $150,000 "toward the fee for professional services of counsel and experts rendered to [appellee]." The court cited F.L. §§ 8–214, 11–110, and 12–103 in its analysis of whether to award attorney's fees. It noted that, in litigating both the custody and property aspects of the divorce, appellee had incurred professional fees of $820,699.29 from August 21, 2000 to February 8, 2002, while appellant had incurred fees of $830,349 between March 2000 and September 30, 2001. The court ultimately opined:

> [Appellee] has been required to expend an extraordinary amount of time and expense due to the complexity of the case and [appellant]'s actions. Her fees are very reasonable under the circumstances. Since [appellant] has not maintained the status quo and has continued to expend marital funds after separation, and because of the discovery difficulties and complexity of this case, [appellee] has had to spend a significant amount of time and expense. While [appellee] has financial resources,[ ], it is only fair and reasonable that appellant contribute to her expenses under these circumstances.

The trial court's reasoning was sound. On remand, in light of the discussions in Sections I A and B and II, *supra,* it may be appropriate for the court to reconsider the award of attorney's fees.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**