PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SANFORD KREISLER; BASK HOLDINGS,
LLC,

　　　　　　*Plaintiffs-Appellants,*

　　　　　　v.

GLENN H. GOLDBERG, t/a S. Goldberg-
Cust; SRG PROPERTIES No. 5, LLC,

　　　　　　*Creditors-Appellees.*

No. 05-2238

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-05-1528-1-AMD; BK-02-57640-SD; AP-03-05227)

Argued: November 28, 2006

Decided: February 26, 2007

Before WILLIAMS and TRAXLER, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Traxler and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** Paul Dennis Scanlon, Manassas, Virginia, for Appellants.
Andrew Martin Croll, SCARLETT & CROLL, Baltimore, Maryland,
for Appellees. **ON BRIEF:** Thomas J. Mitchell, Laurel, Maryland,
for Appellants.

**OPINION**

WILLIAMS, Circuit Judge:

Appellants Sanford Kreisler and Bask Holdings, LLC (collectively "Kreisler"), debtors in a voluntary Chapter 11 case, appeal the district court's order affirming the bankruptcy court's denial of Kreisler's "Motion for Sanctions for Alleged Violation of the Automatic Stay, to Void Ejectment and to Turn Over Property and Rents Collected." Kreisler argues that Appellees Glenn H. Goldberg and SRG Properties No. 5, LLC (collectively "Goldberg") violated the automatic stay under 11 U.S.C.A. § 362(a) (West 2004 & Supp. 2006) by pursuing an ejectment action against the debtors' wholly-owned subsidiary in Maryland state court. Because the district and bankruptcy courts did not err in finding that the automatic stay did not apply to actions against Kreisler's non-bankrupt subsidiary corporation, we affirm.

I.

This case involves the consolidated bankruptcy estates of Sanford Kreisler and Bask Holdings, LLC ("Bask"). Bask filed a voluntary petition for Chapter 11 bankruptcy protection in December 2001, and Sanford Kreisler's Chapter 11 petition followed in May 2002, (J.A. at 39-95).[1] On February 19, 2003, the United States Bankruptcy Court for the District of Maryland ordered that the estates of the two debtors be substantively consolidated.

Bask's wholly-owned subsidiary, Just Holdings, LLC ("Just"), was a party to a ground rent lease on a property known as 1741 Bond St., Baltimore, Maryland. ("the property").[2] The property was titled in

---

[1]Sanford Kreisler and Barbara Kreisler had a 99.5% ownership interest in Bask as Tenants by the Entireties, and Sanford Kreisler had a 0.5% ownership interest in Bask.

[2]Ground rent leases are rare in most states but "have been used in Maryland since Colonial days." *Moran v. Hammersla*, 52 A.2d 727, 728 (Md. 1947). Under Maryland's system of ground rent leases, homeowners lease the land under their houses. *See A History of Maryland Ground Rents*, The Balt. Sun, Dec. 10, 2006; *see also Kolker v. Biggs*, 99 A.2d

Just's name, and Goldberg owned the ground rent. Just's interest in the property represented its only asset and the reason for the company's organization.

On July 31, 2002, Goldberg[3] initiated an action for ground rent it claimed was due on the property by filing a Complaint in Ejectment in the Circuit Court for Baltimore City. The circuit court entered a default judgment against Just on November 15, 2002. Pursuant to Bask's bankruptcy, the Bankruptcy court issued a Notice of Automatic Stay, which Kreisler filed in the ejectment action on December 30, 2002, and the circuit court accordingly stayed further proceedings in the ejectment action. On June 16, 2003, Goldberg filed a motion to terminate the stay. The circuit court granted the motion on July 8, 2003. On November 29, 2003 and again on December 27, 2003, the bankruptcy court denied Bask's motion to enforce the automatic stay regarding the property.

---

743, 745 (Md. 1953) ("In the ground rent lease, as used in Maryland, the owner of the land . . . leases it for the period of 99 years, with a covenant for renewal from time to time forever upon payment of a small renewal fine, upon the condition that the lessee will pay a certain rent and that if the payment is in default the lessor may reenter and terminate the lease."). The lessee's estate is considered personal property, but "in practical effect the relation of the lessee to the property is that of owner of the land and improvements thereon, subject to the payment of annual rent and all taxes on the property." *Moran*, 52 A.2 at 728. If a homeowner fails to pay the ground rent, however, the ground-rent holder has the right to eject the homeowner from the property; in doing so, the ground-rent holder takes possession of the house as well as the land. *See* Fred Schulte and June Arney, *Part 1 of 3: On Shaky Ground: An Archaic Law is Being Used to Turn Baltimoreans out of Their Homes*, The Balt. Sun, Dec. 10, 2006, at 1A.

[3]The ground rent was originally held by two persons in their individual capacities and as trustees of five separate trusts, all trading together as "S. Goldberg - Cust." These two people initiated the ejectment action as plaintiffs. They are the members of SRG Properties No. 5, LLC ("SRG"), and during the course of the ejectment action, SRG was substituted for the individuals as the plaintiff. According to Goldberg's brief, SRG is now the only party in interest in the ejectment action.

The property was sold at auction on March 16, 2005, but the sale ultimately fell through, presumably because the purchaser was unable to obtain title insurance due to the cloud on the title created by the case before us. On March 22, 2005, Bask and Just filed an "Expedited Motion for Violation of the Automatic Stay, to Void Ejectment Action and to Turn Over Property and Rents Collected" in the bankruptcy court. The bankruptcy court denied the motion on April 7, 2005. On April 28, 2005, the bankruptcy court denied a motion for reconsideration. Kreisler appealed to the district court on May 10, 2005. The district court affirmed, and this appeal followed. We have jurisdiction pursuant to 28 U.S.C.A. § 158(d) (West 2006) (conferring jurisdiction on courts of appeals to review final decisions of district courts reviewing bankruptcy decisions).

## II.

"We review the judgment of a district court sitting in review of a bankruptcy court *de novo*, applying the same standards of review that were applied in the district court." *In re Duncan*, 448 F.3d 725, 728 (4th Cir. 2006) (internal quotation marks omitted). "We review findings of fact for clear error and questions of law *de novo*." *Id.*

Pursuant to 11 U.S.C.A. § 362(a),[4] the filing of a Chapter 11 bankruptcy petition automatically stays all proceedings against the bankruptcy debtor and all actions to obtain possession of or to exercise control over property of the bankruptcy estate. 11 U.S.C. § 362(a)(1), (3). Kreisler argues that Bask, one of the bankruptcy debtors, should be treated as the real party in interest in the suit against Just, that the ground rent realty was property of Kreisler's bankruptcy estate, and that even if it was not, the automatic stay should have nevertheless applied. We address these arguments in turn.

## A.

Section 362(a)(1) of Chapter 11 of the Bankruptcy Code stays "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced

---

[4]The 2006 amendments to the Bankruptcy Act do not alter 11 U.S.C.A. § 362 (West 2004 & Supp. 2006) in any way relevant to this appeal.

before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C.A. § 362(a)(1). "Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). An exception to this general rule exists, however, allowing bankruptcy courts to extend the protections of the automatic stay to non-bankrupt codefendants in "unusual circumstances." *Id.* In *Piccinin*, we explained that an "unusual situation . . . arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* We noted that "[a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.*

In the instant case, there exists no basis for us to conclude that there is such identity between Bask and its wholly owned subsidiary, Just, that a judgment against Just would effectively operate as a judgment against Bask. It is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity. *See Turner v. Turner*, 809 A.2d 18, 61 (Md. Ct. Spec. App. 2002) (noting that "[a] corporation is regarded as a separate legal entity"); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (noting that Maryland courts generally will not pierce the corporate veil between a parent and a subsidiary corporation if the subsidiary has "some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding" (internal quotation marks omitted)). Just did not exist to do Bask's act and bidding; it was established to hold title to property. Moreover, because Just is a distinct legal entity, a judgment against Just imposes no obligations or liability on Bask. Just is a Limited Liability Company (LLC) under Maryland law, and under Maryland law, an LLC is treated as a separate legal entity for purposes of liability and property ownership. *Cf. McCleary v. McCleary*, 822 A.2d 460, 466 (Md. Ct. Spec. App. 2003) (holding that a trial court in a divorce proceeding erred in piercing the corporate veil of a limited liability company to

classify the debt of the limited liability company as non-marital debt of the husband). Bask therefore cannot be accurately described as the real-party defendant in the suit against Just. Accordingly, had Just wished to receive the protections afforded by § 362(a)(1), it must have filed for bankruptcy.

B.

Subsection 362(a)(3) automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.A. § 362(a)(3). Kreisler argues that Bask's interest in Just represents property of the bankruptcy estate. As the district court recognized, Bask does have an interest in Just and this interest in the subsidiary corporation does form part of Kreisler's bankruptcy estate. The fact that a parent corporation has an ownership interest in a subsidiary, however, does not give the parent any direct interest in the *assets* of the subsidiary. Although Bask could have established an ownership interest in the property, it chose not to do so. Instead, it created an LLC for the purpose of holding title to the property. Having assumed whatever benefits flowed from that decision, it cannot now ignore the existence of the LLC in order to escape its disadvantages. *See Terry v. Yancey*, 344 F.2d 789 (4th Cir. 1965) (explaining that "where an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages"). The district court therefore correctly distinguished between Bask's interest in Just and Just's direct interest in the property known as 1741 Bond St., Baltimore, Maryland. The assets of Just belonged to Just and did not form part of Bask's bankruptcy estate. Consequently, an action to obtain possession or exercise control over Just's property was not an action to obtain possession or exercise control over property of Kreisler's bankruptcy estate.

C.

Kreisler argues that even if the property was not part of the bankruptcy estate, the automatic stay nevertheless applies to the ejectment action because Just's loss of its property would cause Bask's interest in Just to lose value. Just existed for the sole purpose of holding title to the property and had no other assets. Kreisler contends that, as a

result, Bask's ownership interest in Just would lose all value if Just were ejected from the property. The fact that Bask's interest in Just may lose value, however, is not dispositive. The nature and extent of Bask's interest in Just remains unchanged by Just's loss of the property. For this reason, courts faced with similar situations have held that an automatic stay does not prevent a non-debtor company from taking an action that might affect the value of a debtor's stock, *see In re Calvert*, 135 B.R. 398, 402 (Bankr. S.D. Cal. 1991), and that the bankruptcy of one partner does not stay an action against the partnership, even though the debtor's partnership interests may lose value as a result of the action, *see In re Cardinal Indus.*, 105 B.R. 834, 849 (Bankr. S.D. Ohio 1989) ("While the Debtors' Partnership Interests may lose value if the Partnership Properties . . . are taken away, each partner's rights to its designated shares remains. The Partnerships may acquire new properties or embark upon new enterprises for which the Debtors' shares of profits, losses and distributions remain unchanged.").

In contrast, courts have held that an action against a third party is barred by § 362(a)(3) when a judgment against the third party would effectively operate to foreclose on property of the bankruptcy estate, depriving a debtor of an interest in property, rather than merely affecting an asset's value. *See 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc.*, 835 F.2d 427, 430-31 (2d Cir. 1987) (holding that a landlord's action against a third-party prime lease holder was barred by the automatic stay, because under the applicable state law, if the prime lease failed, the debtor's sublease would necessarily fail as well); *In re Bialac*, 712 F.2d 426, 431-32 (9th Cir. 1983) (holding that the automatic stay prohibited a creditor from foreclosing on property in which a debtor had a right of redemption, even though non-bankrupt third parties owned the property). Accordingly, because Just's loss of the property affected only the *value* of Bask's interests, we agree with the district court that § 362(a)(3) does not apply to the ejectment action against Just.

### D.

We note that although the automatic stay under 11 U.S.C.A. § 362(a) is inapplicable to the ejectment action, Kreisler could have sought injunctive relief if he believed that the ejectment action would

deprive them of funds needed for their reorganization or put detrimental pressure on their reorganization effort, as 11 U.S.C.A. § 105(a) gives the bankruptcy court jurisdiction to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C.A. § 105(a) (West 2004 & Supp. 2006). This provision "empowers the bankruptcy court to enjoin parties other than the bankrupt from commencing or continuing litigation." *Piccinin*, 788 F.2d at 1002 (internal quotation marks omitted). In addition, "the bankruptcy court under its comprehensive jurisdiction as conferred by section 1334, 28 U.S.C., has the inherent power of courts under their general equity powers and in the efficient management of the[ir] dockets . . . to grant a stay." *Id.* at 1003 (internal quotation marks omitted). Kreisler chose not to pursue these avenues, however, so the propriety of injunctive relief apart from the automatic stay is not at issue in this case.

### III.

In sum, we conclude that the automatic stay under 11 U.S.C.A. § 362(a) did not apply to Goldberg's ejectment action against Just because the proceeding was not against a bankruptcy debtor and was not an action to obtain ownership or control of property of Kreisler's bankruptcy estate. Accordingly, we affirm the district court's order affirming the bankruptcy court's denial of Kreisler's "Motion for Sanctions for Alleged Violation of the Automatic Stay to Void Ejectment and to Turn Over Property and Rents Collected."

*AFFIRMED*