12 A.3d 96

**Colonel A. OMAYAKA**

v.

**Josephine O. OMAYAKA.**

**No. 111, Sept. Term, 2008.**

Court of Appeals of Maryland.

Jan. 24, 2011.

Joseph M. Kum (Amity, Kum & Suleman, P.A., Greenbelt, MD), on brief, for appellant.

Camille R. McBride (Camille R. McBride, P.L.L.C., Bowie, MD), on brief, for appellee.

Argued by BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

The parties to this appeal from the Circuit Court for Prince George's County,[1] Colonel A. Omayaka (Appellant) and Josephine O. Omayaka (Appellee), were married on October 2, 1998, and were divorced by a judgment signed at the conclusion of a July 5, 2007 hearing. After that judgment was entered on July 10, 2007, Appellant noted an appeal to the Court of Special Appeals, and filed a brief in which he presented a single argument:

> Appellant made a prima facie case and carried his burden of showing dissipation of marital assets during the pendency of the divorce[.]

In the words of the brief filed by Appellee:

> Appellant failed to carry his burden of proof showing a dissipation of marital assets during the pendency of the divorce proceeding, where Appellee did not expend or move marital funds while the marriage was undergoing an irreconcilable breakdown with the principal purpose of reducing the funds available for equitable distribution, but rather, Appellee saved funds to use for family and household expenses.

Before these arguments were presented to a panel of the Court of Special Appeals, this Court issued a writ of certiorari on its own initiative. 406 Md. 443, 959 A.2d 792 (2008). For the reasons that follow, we shall affirm the judgment of the Circuit Court.

---

1. Because no prior appellate decision has been rendered in the case at bar, the designation of the parties is controlled by Md. Rule 8–111(a)(1).

## Background

On January 24, 2007, Appellee filed an "AMENDED COMPLAINT FOR DIVORCE" that included the following assertions:

5. [Appellee] and [Appellant] did voluntarily agree to live separate and apart on or about May 31, 2005, and have voluntarily lived separate and apart without cohabitation and without interruption since said date. There is no reasonable hope or expectation of reconciliation.

6. All property issues between the parties have been resolved.

On February 23, 2007, Appellant filed an "ANSWER TO AMENDED COMPLAINT FOR ABSOLUTE DIVORCE" and a "COUNTER–COMPLAINT FOR ABSOLUTE DIVORCE AND OTHER RELIEF." Appellant's Answer included the following assertions:

[Appellant] denies that all property issues between the parties have been resolved. Indeed, upon the refinance and conveyance of the parties' marital home on or about April 28th 2006, the parties understood that any proceeds due the [Appellee] would be paid into a trust account set up by [Appellee]'s counsel because [Appellee] had, without [Appellant]'s knowledge and approval, transferred about $80,000.00 in martial funds. In a subsequent communication, [Appellee]'s counsel noted that he had released all but $40,00000 to the [Appellee] and that the rest was to be kept in escrow according to the agreement of the parties. To date, no accounting has been made with respect to how much money [Appellee] took and/or how it was spent.

Appellant's Counter–Complaint included the following assertions and requests:

### COUNT II

### DISSIPATION OF MARITAL ASSETS

11. [Appellant] did refinance the marital home. Pursuant to an agreement between the parties, [Appellee]'s counsel was to place her share of the proceeds in an escrow account until she had accounted for the transfer of marital funds in the amount of $80,000.00. By a June 13th 2006 communication, the parties understood that [Appellee]'s counsel was to release all but $40,000.00 to her and would provide an accounting of what, if anything, was taken and how the marital money was spent. To date[,] no such accounting has been provided.

12. [Appellee] has clearly dissipated the marital funds, these funds were transferred during the pendency of litigation and not spent for any family use purposes. Indeed some of these funds were wired to an overseas bank account and/or persons that [Appellant] is not aware of or was privy to.

WHEREFORE, the [Appellant] requests that the Court:

a. Grant him an absolute divorce from the [Appellee];

b. Have [Appellee] ... account for any dissipation of any marital assets, including funds in bank accounts;

c. Determine the value of marital property of the parties, and make a monetary award to [Appellant] after adjusting the parties' rights in the marital property[;]

d. Reduce to a judgment in favor of [Appellant] against the [Appellee][;]

e. Order [Appellee] to pay attorney's fees, court costs and suit money[.]

During a contentious July 5, 2007 hearing, which was punctuated with several sharp exchanges, Appellant's counsel called Appellee as Appellant's first witness on his Counter–Complaint.[2] Appellee's testimony included the concessions that (1)

---

**2.** Section 9–113 of the Courts and Judicial Proceedings Article provides, in pertinent part: "In a civil case, a party ... may be called by the adverse party and interrogated as on cross-examination." Md.Code Ann., Cts. & Jud. Proc. § 9–113 (2008).

while married to Appellant, she opened two bank accounts in her name only, and (2) from March of 2005 through December of that year, she made "over the counter" withdrawals of approximately $80,000.00 from those accounts. Appellee, however, denied the allegation that she "dissipated" marital funds. The following transpired during Appellee's testimony:

[Appellant's Counsel]: Q . . . Did you discuss with [Appellant] how you [spent] the money from these withdrawals?

A When we lived together, each one of us had our own account. So the way I spend my money, I spend my own money, and he just spent his own money. The only joint account that we had is where we used to pay our bills. That's the only account I could take the money out—you know, we could discuss it before anyone takes the money out.

[Appellant's Counsel]: Q Did you spend any of this money, ma'am, for the family?

A Yes.

[Appellant's Counsel]: Q What did you spend any of these monies for?

A I spend on clothing, I spend on food, I spend on health insurance that I bought for my baby, you know, from Kaiser. I spend on the rent. I spent paying all the credit card debt I had. I spend on the car note. I spend on food[, on] grocery. I spent some money—you know, I have two kids back home. I sent the money to them as I used to do when we used to live together. I spend on the babysitter, too.

At the conclusion of all of the evidence, the Circuit Court announced its decision to (1) grant Appellee an absolute divorce from Appellant, and (2) deny Appellant's counter-claim for dissipation. The following transpired during the Circuit Court's on-the-record analysis of Appellant's dissipation claim:

THE COURT: So then the question becomes what, if anything, is to be done about an allegation and countercomplaint about dissipation of marital assets? I can suggest to you the burden is on Mr. Omayaka in that regard. And

while there has been evidence presented that Ms. Omayaka spent substantial sums of money during the marriage, the only testimony as to where the money went is for household goods, mortgages, clothes, to pay off credit card debt, and to send money to her minor children, somewhere.

The issue is, was the money spent for his or her own benefit or purpose unrelated to the marriage at the time when the marriage is undergoing an irreconcilable break-down. I don't find that that burden has been met.

Accordingly, the first step is not met. If it had been met then the testimony, once again, is that the money is spent for purposes (unintelligible) purposes would be appropriate under the circumstances.

The Court cannot find that there has been a dissipation of assets.

There's also a question of contributions—or source of the funds for those assets. There was one sentence of possible testimony in that regard, and that was that she was—two sentences, we'll say—putting money aside for the future, and she was working at the time. And her testimony with regard to her income is such that it would have been—a reasonable inference would suggest that the money could not have come solely from her work, because [of] the amounts involved.

So I'm going to deny the counterplaintiff's action with regard to dissipation of assets. That leaves no other issue with regard to marital property before the Court. Accordingly, no monetary award will be made.

\* \* \*

[APPELLANT'S COUNSEL]: ... Your Honor, ... for dissipation—you're putting all the burden on us.

THE COURT: I think I just explained that I did not believe that you had made a case. That's not a "prima facie" case. We are at the conclusion of all of the evidence. So it's not a question of a "prima facie" case. The question is, did he meet the burden? And I suggested that he didn't meet the threshold question. And then I went on to say

that even accepting that he did meet it, then the next question is, does she explain adequately where the funds went? And I found that she had.

[APPELLANT'S COUNSEL]: But she didn't put on any evidence, Your Honor, about how the money was spent.

THE COURT: She did. She said that she spent it on her credit cards, her $5,000 loan, her clothing, food, mortgage, sent to the other two children; she went through a whole litany of that.

[APPELLANT'S COUNSEL]: . . . There's no evidence in the record that she spent the money for what she said.

THE COURT: There is evidence. I heard her say so under oath from the stand.

[APPELLANT'S COUNSEL]: There's no corroborating evidence, Your Honor.

THE COURT: I don't recall in the [C]ode where that testimony needs to be corroborated. If you can give me a case that requires that, I'll be happy to look at it.

[APPELLANT'S COUNSEL]: All right, Your Honor.

Appellant now requests (in the words of his brief), "that this Court vacate the judgment of no dissipation and remand the case with instructions to the Circuit Court to enter a Judgment in favor of the Appellant."

### Discussion

■■■■ Only four cases are included in the TABLE OF CITATIONS found in Appellant's brief: *Sharp v. Sharp,* 58 Md.App. 386, [473 A.2d 499] (1984); *Choate v. Choate,* 97 Md.App. 347, 629 A.2d 1304 (1993); *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 649 A.2d 1137 (1994); and *Beck v. Beck,* 112 Md.App. 197, [684 A.2d 878] (1996). Only *Sharp, Choate,* and *Jeffcoat* are cited in Appellee's brief. The parties agree that "[d]issipation [occurs] where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage at a time where the marriage is undergoing an irreconcilable breakdown." *Sharp, supra,* 58 Md.App. at 401, 473 A.2d at 506. While we must determine whether this kind

of dissipation has been proven in the case at bar, we note that dissipation may occur on occasions in which (1) the marriage is *not* undergoing an irreconcilable breakdown,[3] and/or (2) the dissipating spouse's *principal purpose* was a purpose other than the purpose "of reducing the amount of funds that would be available for equitable distribution at the time of the divorce." *Welsh v. Welsh*, 135 Md.App. 29, 51, 761 A.2d 949, 961 (2000). Dissipation occurs when "marital assets were taken by one spouse without agreement by the other spouse." John F. Fader, II & Richard J. Gilbert, *Maryland Family Law*, § 15–10 (4th ed.2006).

In *Solomon v. Solomon*, 383 Md. 176, 857 A.2d 1109 (2004), this Court stated:

> Maryland common law first addressed a husband's dissipation of marital property quite a long time ago. *Feigley v. Feigley*, 7 Md. 537, 561 (1855) (observing that a husband's right to freely alienate property at the expense of supporting his wife is valid, "provided he does so *bona fide,* and with no design of defrauding her of her just claims upon him and his estate."). Dissipation of marital assets, as with many issues in the field of family law, has not been considered much of late by this Court. The majority of modern reported cases developing the doctrine of intentional dissipation of marital assets has been reported by the Court of Special Appeals.

> A trial court's judgment regarding dissipation is a factual one and, therefore, is reviewed under a clearly erroneous standard. "If there is any competent evidence to support the factual findings below, those findings cannot be held to be clearly erroneous." *Fuge v. Fuge*, 146 Md.App. 142, 180,

---

**3.** Appellate courts have held that improper expenditures on a paramour, or on gambling, constitutes dissipation even though the guilty spouse had no intention to reduce the amount of funds that would be available for equitable distribution at the time of the divorce. *See, e.g., Brosick v. Brosick,* 974 S.W.2d 498 (Ky.Ct.App.1998) (gifts to paramour); and *In re Marriage of Bartley,* 712 N.E.2d 537 (Ind.Ct.App.1999) (excessive losses in betting pools on NCAA and NASCAR events).

806 A.2d 716, 738 (2002); *see also McCleary v. McCleary,* 150 Md.App. 448, 462, 822 A.2d 460, 469 (2003).

In determining a marital award, the trial court first must determine the amount and value of the marital property. Generally, "property disposed of before trial cannot be marital property." *Turner* [*v. Turner* ], 147 Md.App. [350] at 409, 809 A.2d [18] at 52 [ (2002) ]. An exception to the general rule has been recognized when a court "finds that property was intentionally dissipated in order to avoid inclusion of the property towards consideration of a monetary award. . . ." *Sharp v. Sharp,* 58 Md.App. 386, 399, 473 A.2d 499, 505 (1984). Even so, "a conveyance made by a husband before and in anticipation of his wife's suit for alimony, or pending such suit, or after decree has been entered therein in the wife's favor, to prevent her from obtaining alimony, is fraudulent and may be set aside, unless the grantee took in good faith, without notice and for value." *Oles Envelope Corp. v. Oles,* 193 Md. 79, 89, 65 A.2d 899, 903 (1949) (holding spouse's sale of marital property stock for $42,000 over book value adequate consideration to defeat fraudulent dissipation claim). To include property that was disposed of during the marriage, the trial court must be persuaded that there is evidence of dissipation, and "the party alleging dissipation has the initial burden of production and burden of persuasion." *McCleary,* 150 Md.App. at 463, 822 A.2d at 469. If the evidence presented in support of a finding of dissipation is insufficient, the trial court reasonably may conclude that the previously relinquished asset should not be included in the marital property.

*Id.* at 201–02, 857 A.2d at 1123–24.

■ The case at bar involves the issue of whether Appellee "spent or otherwise depleted marital funds or property with the principal purpose of reducing the amount of funds that would be available for equitable distribution at the time of the divorce." *Welsh v. Welsh,* 135 Md.App. 29, 51, 761 A.2d 949, 961 (2000). In *Heger v. Heger,* 184 Md.App. 83, 964 A.2d 258 (2009), the Court of Special Appeals stated:

In litigating a claim that one spouse has dissipated marital assets, the critical time is that between the separation or the time when "the marriage is undergoing an irreconcilable breakdown," *Sharp v. Sharp,* 58 Md.App. 386, 401, 473 A.2d 499 (1984), on the one hand, and the ultimate divorce, on the other had. The other critical factor is the purpose on the part of the spending spouse for the expenditure. What matters is not that one spouse has, post-separation, expended some of the marital assets, what is critically important is the purpose behind the expenditure. The doctrine of dissipation is aimed at the nefarious purpose of one spouse's spending for his or her own personal advantage so as to compromise the other spouse in terms of the ultimate distribution of marital assets.

*Id.* at 96, 964 A.2d at 265.

■ Appellant concedes that an appellate court "will not set aside a trial court's determination regarding dissipation of marital assets unless the determination is clearly erroneous." *Beck, supra,* 112 Md.App. at 216, 684 A.2d at 887. According to Appellant, however (in the words of his brief):

The Court incorrectly applied the current Maryland law on dissipation; it did not follow the *Jeffcoat* analytical steps. There can be no doubt that Appellant made out a prima facie case of dissipation; he brought forth testimonial and documentary evidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion that dissipation had occurred.

\* \* \*

Faced with prima facie evidence of dissipation, Appellee then had to produce evidence sufficient to show that the expenditures were appropriate. Appellee failed to produce such evidence even when asked to do so. In fact, she admitted that she did not have any documents to show that she had expended more than $80,000.00 within eight months on the family considering that she was gainfully employed,

had received almost $12,000.00 from her equity share in the refinance of the marital home, and Appellant was paying child support to her. It strains credulity to imagine that one would make counter withdrawals of such large sums of money, over a relatively short period of time, and yet argue that the expenditures were only for family purposes while providing no receipts.

What is more inconceivable is that the Court would not require proof, beyond testimony, that such amounts had indeed been spent appropriately. The Court [took] Appellee's testimony alone; it stated that "the only testimony as to where the money went is for household goods, mortgages, clothes, to pay off credit card debt, and to send money to her minor children, somewhere." But the Court had a duty to evaluate the expenditures to determine whether dissipation had taken place; whether joint funds had been spent for other than family purposes with the intention of reducing the amount of money available to the court for equitable distribution. The Court engaged in a cursory and biased analysis of the testimony and evidence in this matter; as such no such robust evaluation was undertaken.

It is difficult to determine whether Appellant is arguing that, as soon as he satisfied his burden of *production* by presenting "prima facie evidence of dissipation," (1) the ultimate burden of *persuasion* was shifted to Appellee, who was required to prove by a preponderance of the evidence that she had not dissipated the withdrawn funds, or (2) Appellee failed to satisfy her burden of *production* because she failed to produce "any documents" in support of her testimony as to how she spent the funds that she withdrew from the bank accounts that she had opened in her name only. There is no merit, however, in either of those arguments.

In their *Maryland Family Law* treatise, the authors suggest a "**cookbook method**" to resolve a dissipation allegation. As modified to clarify the burdens of production and persuasion, that method is as follows:

- If property does not exist at the time of divorce, it cannot usually be included as marital property.

- Well, that is so unless one spouse proves [by a preponderance of the evidence] that the other spouse dissipated assets acquired during the marriage to avoid inclusion of those assets toward consideration of a monetary award.

- [A prima facie case] of dissipation occurs when evidence is produced that marital assets were taken by one spouse without agreement by the other spouse.

- Then, the burden of going forward with evidence shifts to the party who [allegedly] took the assets without permission to [produce evidence that generates a genuine question of fact on the issue of (1) whether the assets were taken without agreement, and/or (2) ] where the funds are [and/or (3) whether the funds] were used for marital or family expenses.

- If that proof of use for marital or family purposes is not produced, then the property taken is "extant" marital property, titled in or owned by the individual who took the marital property without permission.

- From that "extant" property in the name of one spouse, the other spouse may be given a monetary award to make things equitable.

John F. Fader, II & Richard J. Gilbert, *Maryland Family Law*, § 15–10 (4th ed.2006).

 It is clear that the ultimate burden of persuasion remains on the party who claims that the other party has dissipated marital assets.

The burden of persuasion and the initial burden of production in showing dissipation is on the party making the allegation. *Choate v. Choate*, 97 Md.App. 347, 366, 629 A.2d 1304[, 1314] (1993). That party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that monies have been dissipated, i.e. expended for the

principal purpose of reducing the funds available for equitable distribution, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.

*Jeffcoat, supra,* 102 Md.App. at 311, 649 A.2d at 1142.

Proof that a spouse made sizable withdrawals from bank accounts under his or her control is sufficient to support the finding that the spouse had dissipated the withdrawn funds. *Ross v. Ross,* 90 Md.App. 176, 191, 600 A.2d 891, 898–99, *vacated on other grounds,* 327 Md. 101, 607 A.2d 933 (1992). In the case at bar, the Circuit Court expressly found that "there has been evidence presented that [Appellee] spent substantial sums of money during the marriage[.]" If that evidence had been presented through the testimony of other witnesses, or if Appellant had not questioned Appellee about how she spent the money, there would be merit in Appellant's argument that he "made out a prima facie case of dissipation[.]" Appellant, however, elected to question Appellee about how she spent the funds that she withdrew from her bank accounts in 2005, thereby presenting the Circuit Court with both (1) evidence of the withdrawals, and (2) Appellee's explanation of what she did with the money. While Appellant was certainly entitled to argue that Appellee's explanation was unworthy of belief, the Circuit Court was not required to agree with that argument.[4]

---

4. When a party attempts to prove a particular point by presenting evidence that is less clear, less direct, less reliable and/or less satisfactory than other evidence available to that party, the trier of fact is permitted—but not required—to find that the "better" evidence "would have been detrimental to [that party] and would have laid open deficiencies in, and objections to [that party's] case which the more obscure and uncertain evidence did not disclose." *Loyal Protective Ins. Co. v. Shoemaker,* 178 Okla. 612, 63 P.2d 960, 963 (1936). *See also Herrington v. Leaf River Forest Prods., Inc.* 733 So.2d 774, 777 (Miss.1999). While the record shows that Appellee ran the risk that the Circuit Court would disbelieve her testimony, the record also shows that Appellant made no attempt to undertake pretrial discovery that would have produced documentary evidence of Appellee's withdrawals and expenditures.

 There is no merit in the argument "that this Court [must] vacate the judgment of no dissipation and remand the case with instructions to the Circuit Court to enter a Judgment in favor of the Appellant." In *Figgins v. Cochrane*, 174 Md.App. 1, 920 A.2d 572 (2007), the Court of Special Appeals provided the following explanation for its conclusion that the Circuit Court was not clearly erroneous in finding that the appellant's evidence failed to rebut the presumption that she had improperly benefitted from her confidential relationship with her deceased father:

> The finding of [the Circuit Court] that there was a confidential relationship is unassailable. That relationship created, as a matter of law, the presumption that any largesse exercised by the Father toward the appellant—be it by deed of property or by gift from an equity loan—was improperly induced by the relationship, whatever the modality of the transfer might turn out to be. The burden was cast upon the appellant to rebut that invalidating presumption. [The Circuit Court] found that "in no manner has [appellant] met that burden." [The Circuit Court] was simply not persuaded, and there was evidence to support that non-persuasion. That there might also have been some evidence in the case pointing in the other direction is beside the point. It was clearly a question of fact for the fact finder. [The Circuit Court's] conclusion in that regard cannot, therefore, be said to have been clearly erroneous.

*Id.* at 14–15, 920 A.2d at 580. This Court quoted that analysis with approval in *Figgins v. Cochrane*, 403 Md. 392, 406, 942 A.2d 736, 744 (2008), while concluding "as did the Court of Special Appeals, that the trial court's finding that [Petitioner] had not met her burden to prove the validity of the transfer, was not clearly erroneous." *Id.* at 414, 942 A.2d at 749. As the Court of Special Appeals noted in *Bricker v. Warch*, 152 Md.App. 119, 831 A.2d 453 (2003):

> Although it is not uncommon for a fact-finding judge to be clearly erroneous when he [or she] is affirmatively **PERSUADED** of something, it is, as in this case, almost impossi-

ble for a judge to be clearly erroneous when he [or she] is simply **NOT PERSUADED** of something.

*Id.* at 137, 831 A.2d at 464 (emphasis in original).

 In its assessment of the credibility of witnesses, the Circuit Court was entitled to accept—or reject—*all, part,* or *none* of the testimony of any witness, whether that testimony was or was not contradicted or corroborated by any other evidence. The finding that Appellee had testified truthfully was therefore not erroneous—clearly or otherwise—merely because the Circuit Court *could* have drawn different "permissible inferences which might have been drawn from the evidence by another trier of the facts." *Hous. Opportunities Comm'n of Montgomery County v. Lacey,* 322 Md. 56, 61, 585 A.2d 219, 222 (1991) (internal citations omitted). Because the Circuit Court was entitled to find that Appellee had "explain[ed] adequately where the funds [that she had withdrawn from her bank accounts in 2005] went[,]" we shall affirm the judgment at issue.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**

